# PEREGO *v.* DODGE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 273. Argued May 1, 1896. — Decided May 18, 1896.

This complaint being, in effect, a bill to quiet title as against an adverse claim, and the plaintiff having thus voluntarily invoked the equity jurisdiction of the court, he is in no position to urge, on appeal, that his complaint should have been dismissed because of adequacy of remedy at law, and such an objection comes too late in the appellate tribunal.

Where a case is one of equitable jurisdiction only, the trial court is not bound to submit issues of fact to a jury; and, if it does so, is at liberty to disregard the verdict and findings of the jury.

By reason of his selection of this form of action, and his proceeding to a hearing and decree without objection, the contention of the appellant in respect of his deprivation of trial by jury comes too late.

The act of March 3, 1881, c. 140, 21 Stat. 505, was not intended to require and does not require all suits under Rev. Stat. § 2326, to be actions at law and to be tried by a jury.

THIS was a suit brought by William Perego against W. H. Dodge and others in the District Court for the Third Judicial District of the Territory of Utah in pursuance of the provisions of section 2326 of the Revised Statutes. The complaint alleged the title of plaintiff to a mining claim, called the Perego, of which he averred he was in possession; described it; and stated the date of location, existence of the vein and the other facts entitling him to a decree founded upon such title. It was then alleged that defendants had made application for a patent to certain mining claims known as the Mayflower Nos. 4 and 5, and that they had wrongfully surveyed said claims so as to conflict with plaintiff's claim; and, after describing the area in conflict, averred that notice of the application for patent by defendants was published; that within the sixty day period of publication plaintiff filed in the land office his adverse claim, and brought this suit within thirty days thereafter. Plaintiff prayed judgment and relief against defendants, " that the plaintiff is the owner and lawfully in and entitled to the possession of the last above described premises, the area in conflict between the said Perego mining

claim and the alleged consolidated claim of Wm. H. Dodge *et al.* upon alleged Mayflower No. 4 and Mayflower No. 5 lode locations and the lodes therein, and quieting and confirming plaintiff's title thereto and possession thereof; that the defendants have no title to or right of possession of said conflict area or the lodes therein or any part thereof ; that the defendants be restrained pending the action and upon trial perpetually from entering in or upon said conflict area or the lodes thereon or any part thereof or mining in or extracting any ores or mineral therefrom, and from in any way interfering with the possession thereof; also that the plaintiff have all other and further proper relief, with costs of suit."

Defendants answered denying the material allegations of the complaint, and further affirmatively set up the necessary jurisdictional facts of their location, averred that the required assessment work had been fully performed, claimed a valid location of the Mayflower. Nos. 4 and 5, and prayed that defendants be adjudged to be the owners and entitled to the possession of the said Mayflower Nos. 4 and 5 lodes and mining claims, including the area in conflict, and for all other proper relief, and for costs of suit.

The case came on for trial and the parties appeared by their attorneys, as the record states, "present and ready for trial and the case is tried before the court." The trial occupied three days, May 6, 7 and 9, 1891, and on May 11 the following entry was made: "This case having been heretofore tried and submitted to the court, and the court being now fully advised, finds the issues for the defendants, and it is ordered that decree be entered herein in favor of the defendants and against the plaintiff and quieting and confirming the title of the defendants to the area in conflict herein, and plaintiff is allowed thirty days' stay and the same time to file notice of motion and statement on motion for new trial." The District Court made findings of fact and conclusions of law, which commenced as follows: "This cause duly coming on for trial on the merits before the court without a jury, and the court having heard the pleadings, evidence and arguments of the respective counsel, the court now makes and files the following findings of fact and

conclusions of law." The court found the claims of defendants valid and that of plaintiff invalid as against defendants, and that defendants were entitled to a decree "adjudging them to be the owners (subject only to a paramount title of the United States) and in and entitled to the possession of the whole and every part of the said Mayflower No. 4 and Mayflower No. 5 lode mining claims, and as part thereof and belonging thereto the conflict areas described in the complaint and the whole thereof, and adjudging that the plaintiff had not at the time he filed his protest and adverse claim or at any time since, and has not now any right, title or interest in or to said or any part of said conflict areas described in the complaint, and forever enjoining, estopping and debarring the plaintiff and any and all persons claiming by, through or under him from at any time setting up any claim of right or title to said or any part of said mining claim or conflict area, and forever confirming and quieting the defendants' right and title thereto, and awarding the defendants their costs herein as against the plaintiff."

These findings and the decree in accordance therewith were filed and entered on August 18, 1891. On August 5, 1892, plaintiff, acting through other counsel than appeared at the trial, filed a notice of intention to move the court to set aside and vacate the findings and decision and decree, and for a new trial, on the ground: "1st. Irregularity in the proceedings of the court by which the plaintiff was prevented from having a fair trial. 2d. Errors of law occurring at the trial, to wit, the trial of said cause by the court without a waiver of jury by the plaintiff. 3d. Because the findings and decree are irregular and void as appears by the record." This notice was accompanied by an affidavit that the value of the property exceeded one thousand dollars; that plaintiff had not by himself in person or by attorney, at any time; orally, or in writing, waived his right of trial by jury in said suit, and that he had at all times desired to have the same tried by a jury; that no notice of the decision of the court in the cause had been served upon him or his attorney.

Notice of appeal to the Supreme Court of the Territory of

Utah was filed August 15, 1891, and on August 16, plaintiff was allowed thirty days' time to file an undertaking on appeal. On September 3, a new notice was served of the motion to vacate and set aside the findings and decree and for new trial. On September 10, thirty days was allowed plaintiff for an undertaking on appeal. On September 19, the motion to vacate and set aside the decree and grant a new trial was submitted and overruled, and on October 4, 1892, notice of appeal from that order was given, and an undertaking on appeal was subsequently filed. No statement or bill of exceptions appears in the record. The case was brought to a hearing in the Supreme Court of the Territory of Utah, and the judgment of the District Court was affirmed with costs. 9 Utah, 3. Affidavits of the value of the matter in dispute were submitted and an appeal allowed to this court.

Errors were assigned to the effect that the Supreme Court of Utah erred in affirming the decree of the District Court in that the District Court should have dismissed the complaint because in equity when the remedy was at law; should not have awarded defendants affirmative relief in the absence of a cross complaint; and should not have tried the case without a jury.

*Mr. B. F. Lee,* (with whom was *Mr. Gerald G. P. Jackson* on the brief,) for appellant.

*Mr. Arthur Brown,* (with whom was *Mr. William H. Dickson* on the brief,) for appellees.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

In the Territory of Utah there was but one form of action, legal or equitable, through the intervention of a jury or by the court itself, according to the nature of the relief sought, provided, however, that no party could be "deprived of the right of trial by jury in cases cognizable at common law." Rev. Stat. § 1868; act of April 7, 1874, c. 80, § 1, 18 Stat.

27; Comp. Laws of Utah, § 3126; *Idaho & Oregon Land Improvement Co.* v. *Bradbury*, 132 U. S. 509, 513.

By section 3468 of the Code of Civil Procedure of Utah, an action might be brought by any person against another who claimed an estate or interest in real property adverse to him, for the purpose of determining such adverse claim; and this complaint was, in effect, a bill to quiet title, as against an adverse claim, and prayed, accordingly, for a decree quieting plaintiff's title, and adjudicating that defendants had no title or right of possession; for injunction; and for general relief.

We are of opinion that it was competent for the District Court to grant the relief sought, and that it had jurisdiction of the subject-matter. Plaintiff, having voluntarily invoked the equity jurisdiction of the court, was not in a position to urge, on appeal, that his complaint should have been dismissed because of adequacy of remedy at law. Even a defendant, who answers and submits to the jurisdiction of the court, and enters into his defence at large, is precluded from raising such an objection on appeal for the first time. *Reynes* v. *Dumont*, 130 U. S. 354, 395; *Kilbourn* v. *Sunderland*, 130 U. S. 505; *Brown* v. *Lake Superior Iron Co.*, 134 U. S. 530, 536. Nor did the Supreme Court of Utah err in overruling the contention that affirmative relief was improperly awarded defendants because they had filed no cross complaint. Such relief was sought by the answer, which was treated by the parties and proceeded on by the court as equivalent to a cross pleading. The objection came too late in the appellate tribunal. *Coburn* v. *Cedar Valley Land Co.*, 138 U. S. 196, 221.

Section 2325 of the Revised Statutes points out how patents for mineral lands may be obtained. Application is filed in the proper land office as therein prescribed and notice of such application published, and if no adverse claim is filed at the expiration of sixty days of publication, it is assumed that the applicant is entitled to a patent, and that no adverse claim exists.

Section 2326 provides as follows:

" Where an adverse claim is filed during the period of pub-lication, it shall be upon oath of the person or persons making

the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim."

It is then provided that after judgment the party shall file a certified copy of the judgment roll with the register of the land office, together with the certificate of the surveyor general as to the requisite amount of labor or improvements, and that the whole proceedings and the judgment roll shall be certified by the register to the Commissioner of the General Land Office, whereupon a patent shall issue for the claim.

Thus the determination of the right of possession as between the parties is referred to a court of competent jurisdiction, in aid of the land office, but the form of action is not provided for by the statute; and, apparently, an action at law or a suit in equity would lie, as either might be appropriate under the particular circumstances, an action to recover possession when plaintiff is out of possession, and a suit to quiet title when he is in possession.

In the case before us plaintiff averred that he was in possession, and framed his complaint in that aspect. Having instituted his suit as an equity cause, issues were made up and the case heard and disposed of and went to decree as in equity, and nearly a year afterwards he carried the case to the Supreme Court of the Territory and complained that the decree was fatally erroneous in that a jury trial was not had. But where a case is one of equitable jurisdiction only, the trial court is not bound to submit any issues of fact to a jury, and, if it does so, is at liberty to disregard the verdict and findings of the jury, "either by setting them or any of them aside, or by letting them stand, and allowing them more or less

weight in its final hearing and decree, according to its own view of the evidence in the cause." *Idaho & Oregon Land Improvement Co.* v. *Bradbury,* 132 U. S. 509, 515.

By his selection of this form of action, and his proceeding to a hearing and decree without objection, his present contention in respect of deprivation of trial by jury came too late. Even if the action should have been an action at law, still the court had jurisdiction, and a defective exercise of its power would only amount to an irregularity capable of being waived by the parties and susceptible of correction as any other mere errors are corrected. Indeed, if the case were treated as an action at law, the trial by jury might have been waived, and we think was waived in this instance.

By the fourth section of the act of Congress of March 3, 1865, (13 Stat. 500, c. 86,) carried forward into sections 649 and 700 of the Revised Statutes, it was enacted that "issues of fact in civil cases in any Circuit Court of the United States may be tried and determined by the court without the intervention of a jury, whenever the parties, or their attorneys of record, file a stipulation in writing with the clerk of the court waiving a jury."

In *Kearney* v. *Case,* 12 Wall. 275, this statute was considered, and it was held that parties might waive a jury, as they could before the act was passed, without filing a written stipulation, but that in such case no error could be considered in the action of the court on such trial, and that parties would be presumed in this court to have waived their right to trial by jury of issues of fact whenever it appeared that they were present at the trial in person or by counsel and made no demand for a jury. See also *Bond* v. *Dustin,* 112 U. S. 604.

By section 3340 of the Code of Utah, issues of fact in actions at law are required to be tried by a jury, and by section 3378 provision is made for the waiver of a jury as therein prescribed. But, as ruled in *Kearney* v. *Case,* the right may be otherwise waived, and such waiver be sufficient to support the judgment, though not sufficient to authorize the review of the rulings of the court at the trial. Tested by any rule, there can be no question that this record shows such waiver here.

It is true that on the motion to vacate the decree and for a new trial an affidavit was filed that there was no waiver orally or in writing, in person or by attorney, but we suppose that to mean a waiver according to section 3378, and that was not material. Moreover, the Supreme Court held that the notice of intention to move for a new trial, the affidavit and the minutes of the trial court were no part of the record, because not embodied in any statement of case or bill of exceptions, and that appears to be the settled rule in that jurisdiction.

But it is insisted that by force of the act of Congress of. March 3, 1881, c. 140, 21 Stat. 505, this class of cases must be disposed of on trial by jury according to the course of the common law, and that either these entire proceedings were absolutely void, not for want of equity but for want of power; or that, at all events, the requirement of trial by jury is imperative and cannot be waived, and that the seventh article of Amendment and the law were violated by proceeding to judgment without it.

The amendatory act provides: " That if, in any action brought pursuant to section 2326 of the Revised Statutes, title to the ground in controversy shall not be established by either party, the jury shall so find, and judgment shall be entered according to the verdict. In such case costs shall not be allowed to either party, and the claimant shall not proceed in the land office or be entitled to a patent to the land in controversy until he shall have perfected his title." We do not think the intention of this act was to change the methods of trial. Its manifest object was to provide for an adjudication, in the case supposed, that neither party was entitled to the property, so that the applicant could not go forward with his proceedings in the land office simply because the adverse claimant had failed to make out his case, if he had also failed. In other words, the duty was imposed on the court to enter such judgment or decree as would evidence that the applicant had not established the right of possession, and was for that reason not entitled to a patent. The whole proceeding is merely in aid of the land department, and the

object of the amendment was to secure that aid as much in cases where both parties failed to establish title as where judgment was rendered in favor of either, and while the finding by a jury is referred to, we think that, where the adverse claimant chooses to proceed by bill to quiet title, and as between him and the applicant for the patent neither is found entitled to relief, the court can render a decree to that effect, just as it would render judgment on a verdict if the action were at law. If Congress had intended to provide that litigation of this sort must be at law, or must invariably be tried by a jury, it would have said so. There is nothing to indicate the intention thus to circumscribe resort to the accustomed modes of procedure or to prevent the parties from submitting the determination of their controversies to the court.

It must be remembered that it is "the question of the right of possession" which is to be determined by the courts, and that the United States is not a party to the proceedings. The only jurisdiction which the courts have is of a controversy between individual claimants, and it has not been provided that the rights of an applicant for public lands as against the government may be determined by the courts in a suit against the latter. *United States* v. *Jones*, 131 U. S. 1; *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683, 694.

It was held by Mr. Justice Lamar, when Secretary of the Interior, that, notwithstanding the judgment of a court on the question as to the right of possession between two litigants, it still remained for the land department to pass on the sufficiency of the proofs, and to ascertain the character of the land and whether the conditions of the law had been complied with in good faith before the government parted with the title. 4 Land Dec. 314, 316. But whatever the extent of the conclusiveness of a judgment under the statute, and granting that the government may be said to be interested in respect to the possessory title, we do not regard the act of March 3, 1881, as intended to require or requiring all suits under section 2326 to be actions at law and to be tried by a jury.

*Judgment affirmed.*